[Civ. No. 20680. First Dist., Div. One. Mar. 29, 1963.]

FRANK T. MAXON, Plaintiff and Appellant, v. SECURITY INSURANCE COMPANY OF NEW HAVEN CONNECTICUT et al., Defendants and Respondents.

Mathews & Traverse, Francis B. Mathews and Edward F. Traverse for Plaintiff and Appellant.

Huber & Goodwin and Dayton D. Murray, Jr., for Defendants and Respondents.

MOLINARI, J.—This is an appeal from a judgment in favor of the defendants, hereinafter referred to as the respondents, and against the plaintiff, hereinafter referred to as the appellant.

## THE RECORD

The appellant filed a complaint against the respondents, the pertinent allegations of which are as follows: That the respondent insurance company through its agent, the respondent Petersen, issued a policy of liability insurance to the appellant, as the insured, which contained the following provisions:

" 'Store Keepers Liability Coverage. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness, or disease, including death at any time resulting therefrom, sustained by any person or injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the retail store hazard.' "

" 'Retail Store Hazard Defined. The ownership, maintenance or use of retail store premises, or operations necessary or incidental thereto.' "

"Defense. . . . With respect to such insurance as is aforded [sic] by this policy, the Company shall (a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent";

that while said policy was in force a certain Mrs. Beulah K. Johnson gave a check to an employee of the appellant, which check was presented for payment by the appellant and was

returned marked "account closed"; that thereafter the appellant filed a complaint with the district attorney for the arrest of the said Beulah Johnson; that the said Beulah Johnson was arrested, but the complaint against her was thereafter dismissed by the district attorney; that the said Beulah Johnson thereupon instituted an action for malicious prosecution, the defense to which the appellant tendered to the respondents who refused to furnish such defense; that the appellant was caused to expend costs for investigators, witnesses, attendants and attorneys' fees in the sum of $2,050.05 for the defense of said action, which sum, the respondents have refused to pay; and that the appellant has performed all of the promises, covenants and conditions in said agreement on his part to be performed.

The record is silent as to whether there was any responsive pleading to the complaint by the respondents. We have an inkling as to what next transpired in a "Memorandum of Opinion," signed and filed by the judge of the court below, which recites that "It was agreed by counsel for both parties that the Court could determine, as a matter of law, whether or not the insurance contract required the defendant to defend a malicious prosecution action brought against plaintiff by a third party." The said opinion, after discussing legal principles, which the court deemed applicable, contains the following statement: "It is adjudged that the language of the insurance policy does not require the defendant to reimburse the plaintiff for money expended in his own defense in a malicious prosecution action."[1]

It appears that a "motion to amend the complaint and to reconsider opinion" was made by the appellant, a ruling on such a motion having been made a part of the record on appeal. Said ruling purports to grant the motion to amend but contains a statement that in the court's opinion, the amendment to the complaint "does not change the ruling

---

[1]The said opinion also contains the following language:

"The pre-trial conference order further provided 'If the court rules against the plaintiff on this issue, the factual issue is presented as to whether Fred Peterson was a duly authorized agent, and, if so, whether he represented that the policy covered malicious prosecution.' In view of Section 533 of the Insurance Code cited above and the *Abbott* case cited above and Section 1668 of the Civil Code, the court holds that even though it might be established that Fred A. Petersen was a duly authorized agent and that he represented that the insurance policy afforded coverage for malicious prosecution, plaintiff could not recover as a matter of law because such a contract would be against public policy."

heretofore made."[2] The amended complaint contained the
same allegations, with the addition of an allegation to the
effect that the action brought by Beulah Johnson against the
appellant terminated in favor of the appellant, that the court
in said action found that there was no evidence of malice
on the part of the appellant and specifically found that the
actions of the appellant were done in good faith and not
maliciously, but with probable cause and without intent to
injure Mrs. Johnson in any manner. An answer to the
amended complaint was filed by the respondents, who there-
after made a motion entitled "Motion for Summary Judg-
ment" which recited that the basis of the motion was that
the action was without merit. An "affidavit" in support of
the motion was filed by one of the attorneys for the respond-
dents.[3] No counteraffidavit was filed by the appellant. The
said motion came on for hearing, whereupon the court made
its order dismissing the amended complaint and ordering
judgment for the respondents.[4] A judgment pursuant to

---

[2]The court made the following statement in its said ruling:

"The issue presented at the pre-trial conference was, 'does the policy
of insurance afford coverage for malicious presecution.' The amended
complaint now presents the issue, does the policy afford a defense for a
groundless suit in malicious prosecution."

[3]The said affidavit in its entirety reads as follows:

"Dayton D. Murray, Jr., being first duly sworn, deposes and says:

"That he is an attorney at law, duly licensed to and practicing in all
of the Courts of the State of California and is one of the attorneys of
record for the Defendants herein.

"That all of the material allegations of the Plaintiff's complaint and
the Plaintiff's Amended Complaint have been controverted by the answers
of the Defendants, which are filed herein.

"That based upon the allegations of the complaint and the amended
complaint, as controverted by the answers on file herein, of these moving
Defendants, even though all of the said allegations were admitted, the
Plaintiff cannot recover as a matter of law, because of the provisions of
Section 533 of the Insurance Code of the State of California, and the
ruling in the case of *Abbott* vs *Western National Indemnity Co.*, 165 Cal.
App.2d, 302 [331 P.2d 997], *Glenn* [*Lamb*] vs *Belt Casualty Co.*, 3 Cal.
App.2d, 624 [40 P.2d 311].

"Based upon the allegations herein contained, the law as set forth and
the memoranda of opinion heretofore entered by the court, the Defendants
herein are entitled to an order dismissing the complaint and the entry of
summary judgment in favor of these Defendants.

Dayton D. Murray, Jr."

[4]The said order contains the following recital:

"It appearing to the Court and the Court finds that the answer is on
file in the action, that the declarations of the Defendants state facts
within the knowledge of the declarants which show that the action has
no merit, and that there are no declarations of the Plaintiff to present any
triable issue of fact. . . ."

said order entitled ''Judgment by Court Under C.C.P. section 437-c'' was thereafter signed by the court and filed in the proceedings. This is the judgment from which the appeal is taken.

Notwithstanding that the court and counsel were laboring under the impression that the motion was one for summary judgment, it is clear that the proceeding was not one for the determination of whether there were any triable issues of fact but whether the amended complaint stated a cause of action.[5] Moreover, the purported affidavit filed by the respondents does not contain any evidentiary facts nor does it set forth any facts showing that if the affiant were called as a witness he could competently testify thereto. A reading of the purported affidavit in support of the motion readily discloses that it is nothing more than an argument.

If there is a proper judgment in this case it is a judgment on the pleadings. We are satisfied, after wending our way through the procedural maze, that the motion here presented and submitted to the court, notwithstanding its nomenclature, was nothing more than a motion for a judgment on the pleadings.[6] ▓▓▓ Where such a motion is made by the defendant, the only question, as on general demurrer, is one of law, and that question is simply whether the complaint states a cause of action. (*Tracy* v. *Ferrera,* 144 Cal.App.2d 827 [301 P.2d 905]; *Beverage* v. *Canton Placer Mining Co.,* 43 Cal.2d 769 [278 P.2d 694].)

### QUESTION PRESENTED

Does the appellant's amended complaint state a cause of action?

### *Does the Subject Policy Provide Indemnity Against an Action for Malicious Prosecution?*

▓▓▓ At the outset we must bear in mind that we are dealing with the sufficiency of the amended complaint as to whether it states a cause of action. We are accordingly required to treat all of the facts therein stated as true.

---

[5]The nature, scope and function of the summary judgment procedure was recently discussed with particularity by Justice Sullivan of this court in *Snider* v. *Snider,* 200 Cal.App.2d 741 [19 Cal.Rptr. 709].

[6]A ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for the wrong reason. If right on any theory of law applicable to the case it must be sustained regardless of the grounds upon which the court reached its conclusion. (*Snider* v. *Snider,* 200 Cal.App.2d 741, 756 [19 Cal.Rptr. 709]; *Davey* v. *Southern Pac. Co.,* 116 Cal. 325, 329 [48 P. 117]; 3 Witkin, Cal. Procedure, p. 2234.)

 We must also take cognizance of certain well-established rules of construction applicable to insurance contracts, to wit: that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer; if semantically permissible, the contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for the losses to which the insurance relates; if the insurer uses language which is uncertain any reasonable doubt will be resolved against it; if the doubt relates to the extent or fact of coverage, whether as to peril insured against, the amount of liability or the person or persons protected, the language will be understood in its most inclusive sense, for the benefit of the insured; and, where two interpretations equally fair may be made, that which affords the greatest measure of protection to the assured will prevail. (*City of Santa Monica* v. *Royal Indem. Co.*, 157 Cal.App.2d 50, 54-55 [320 P.2d 136]; *Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423, 437-438 [296 P.2d 801, 57 A.L.R.2d 914]; *Arenson* v. *National Automobile & Cas. Ins. Co.*, 45 Cal.2d 81, 83 [286 P.2d 816]; *Fageol T. & C. Co.* v. *Pacific Indemnity Co.*, 18 Cal.2d 731, 747 [117 P.2d 661]; *Osborne* v. *Security Ins. Co.*, 155 Cal.App.2d 201, 207-208 [318 P.2d 94]; *Russ-Field Corp.* v. *Underwriters at Lloyd's*, 164 Cal.App.2d 83, 92 [330 P.2d 432].)

The inquiry in the present case is focused primarily upon the meaning of the word "accident" as used in the policy. Before proceeding to interpret the meaning of the word "accident," it should be noted that the policy provisions in question do not use the words "malicious prosecution" nor do they make specific reference to the tortious liability known as "malicious prosecution." By its terminology the policy proposes to indemnify the insured against damages for bodily injury sustained by any person, " '*caused by accident and arising out of the retail store hazard.*' " (Italics added.) This provision obviously has reference to an injury to a person other than the insured because it purports " '[t]o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury' " sustained by such person.

Webster defines accident as "an unexpected happening causing loss or injury which is not due to any fault or misconduct on the part of the person injured but from the consequences of which he may be entitled to some legal relief" "an unforeseen unplanned event or condition. . . ." (Web-

ster's New Internat. Dict. (3d ed.).) ■ In *Geddes & Smith, Inc.* v. *St. Paul Mercury Indemnity Co.*, 51 Cal.2d 558 [334 P.2d 881], the court defined accident as " ' "a casualty—something out of the usual course of events and which happens suddenly and unexpectedly and without design of the person injured." ' . . . It ' "includes *any event which takes place without the foresight or expectation of the person acted upon or affected by the event.*" ' " (P. 563.) (*See Richards* v. *Travelers Ins. Co.*, 89 Cal. 170, 176 [26 P. 762, 323 Am. St. Rep. 455]; *Price* v. *Occidental Life Ins. Co.*, 169 Cal. 800, 802 [147 P. 1175]; *Rock* v. *Travelers' Insurance Co.*, 172 Cal. 462, 465 [156 P. 1029, L.R.A. 1916E 1196]; *Moore* v. *Fidelity & Casualty Co.*, 203 Cal. 465, 471 [265 P. 207, 56 A.L.R. 860].) ■ And in *Hyer* v. *Inter-Insurance Exchange etc. of So. Cal.*, 77 Cal.App. 343 [246 P. 1055], the court discusses the definition of accident as follows: "It is an 'occurrence which produces hurt or injury.' It also will be noticed that under this quite generally approved definition the word, as used in some classes of cases, denotes the cause of the hurt or loss; in other classes of cases it denotes the event, i.e., the unintended and unexpected loss or hurt apart from its cause; and in still other instances it may denote both the cause and the event, no attempt being made to discriminate between them. . . . But as commonly used in liability insurance policies, the word 'accident' is predicated of an occurrence which is the *cause* of the injury. That is to say, as used in liability insurance contracts the word is employed to denote the cause, rather than the effect." (Pp. 348-349.)

Our immediate inquiry is directed, accordingly, to the determination of whether there was an occurrence in the case at bench which may be denoted an accident, and if so, to determine who sustained it. As we have pointed out above, the policy in question did not purport to insure the appellant for an accident happening to him, but to a third person. The only such person involved in the present case was Mrs. Johnson. The crucial question, then, is whether the amended complaint alleges facts sufficient to show that Mrs. Johnson sustained an accident. ■ Before turning to the complaint to make this determination we are persuaded to state that, in our opinion, the arrest or prosecution of a person, who is innocent and has no reason to expect that he will be arrested or prosecuted for a crime, is, as to such person, an accident. As to that person, such an occurrence is a casualty, that is, something out of the usual course of events which happens

suddenly, unexpectedly, and without expectation on his part, and is the *cause* of the injury suffered by such person as a result of such occurrence.

The gist of the appellant's amended complaint is that he filed a criminal complaint against Mrs. Johnson pursuant to which she was arrested; that the said criminal complaint was thereafter dismissed by the district attorney; and that thereupon Mrs. Johnson instituted an action against the appellant for malicious prosecution which he was required to defend and in which he prevailed after a trial, thus incurring certain expenses for which he seeks indemnity from the respondents. The said complaint further alleges that the trial court in said action found that his actions were done in good faith, with probable cause and without malice. Aside from the allegations pertaining to the arrest and the dismissal of the criminal complaint, the amended complaint states that the appellant was sued for "malicious prosecution" and that a trial and judgment ensued thereon. While none of the allegations of Mrs. Johnson's complaint, nor any of the facts adduced at the trial thereon are set out in the complaint before us, and while in such respect the complaint may have been vulnerable to a special demurrer, we are, in the absence of such special attack, entitled to assume that the cause proceeded to trial and judgment upon a complaint which stated a cause of action for malicious prosecution. ▆▆ The elements of such a cause of action are: (1) A judicial proceeding favorably terminated; (2) want of probable cause; and (3) malice. (*Oppenheimer* v. *Tamblyn,* 162 Cal.App.2d 293, 295 [327 P.2d 574]; *Oppenheimer* v. *Tamblyn,* 167 Cal.App.2d 158, 160 [334 P.2d 152].) It is also necessary, of course, that there be an injury or damage suffered by the plaintiff as a result of the other elements of the cause of action. (*D'Alessandro* v. *Pickford,* 22 Cal.App.2d 239, 242 [70 P.2d 646].) ▆▆ The principal injury resulting from the malicious prosecution of a criminal charge is to the feelings and reputation of the defendant therein caused by the accusation and his arrest and imprisonment thereunder. (*Ray Wong* v *Earle C. Anthony, Inc.,* 199 Cal. 15, 19 [247 P. 894]; *Hyashida* v. *Kakimoto,* 132 Cal.App. 743, 746 [23 P.2d 311].)[7]

We thus have a complaint in the instant case which alleges, in essence, that Mrs. Johnson brought an action against the

[7]The complaint herein alleges that in the malicious prosecution action Mrs. Johnson claimed mental suffering and physical suffering and physical injuries by reason of the arrest.

appellant for malicious prosecution; that a trial was had thereon in which Mrs. Johnson was able to prove that the criminal proceeding terminated in her favor, but that she was unable to prove that the appellant acted from want of probable cause and with malice. The appellant's complaint thus discloses facts from which the conclusion can be drawn that both Mrs. Johnson and the appellant were innocent persons. There is nothing on the face of the complaint to show that Mrs. Johnson foresaw or expected the arrest. To the contrary, the fact that the criminal proceedings terminated in Mrs. Johnson's favor indicates her innocence. (*Jaffe* v. *Stone,* 18 Cal.2d 146, 150 [114 P.2d 335, 135 A.L.R. 775].)[8] We are persuaded, therefore, that Mrs. Johnson sustained an accident as a result of her said arrest. We are also of the opinion, moreover, that this accident occurred as a result of a "retail store hazard" as that term is defined in the policy. It is a matter of common knowledge that worthless checks are constantly being presented to retail establishments and that arrests and criminal prosecutions are often initiated as a result thereof.

The policy in question does not, however, cover every accidental injury which may be suffered by a third party as the result of such a "retail store hazard." Under the terms of the policy the respondent agrees "[t]o pay on behalf of the insured all sums which the insured shall become *legally obligated* to pay as damages. . . ." (Italics added.) Under the law of this state there is no liability for procuring the arrest or prosecution of another under lawful process, unless it is from malicious motives and without probable cause. (See *Floro* v. *Lawton,* 187 Cal.App.2d 657, 667 [10 Cal.Rptr. 98]; and *Singleton* v. *Perry,* 45 Cal.2d 489, 494 [289 P.2d 794].) In other words, no one can recover damages for a legal arrest unless there are present the elements which comprise the tort of malicious prosecution. A legal arrest without the elements of want of probable cause, malice, and a judicial proceeding favorably terminated is damage without a wrong. Accordingly, if Mrs. Johnson was entitled to recover

[8]While it is not enough to merely show that the criminal proceeding was dismissed, it being necessary to show the grounds of dismissal so as to indicate that it was upon the merits and not upon technical grounds, for procedural reasons, or for any other reason not inconsistent with guilt (*Jaffe* v. *Stone,* 18 Cal.2d 146, 150 [114 P.2d 335, 135 A.L.R. 775]; *Oppenheimer* v. *Tamblyn,* 162 Cal.App.2d 293, 296 [327 P.2d 574]; *Oppenheimer* v. *Tamblyn,* 167 Cal.App.2d 158, 161 [334 P.2d 152]), we must again assume that the malicious prosecution action proceeded to judgment on a complaint which stated a cause of action.

against the appellant she could only do so by establishing that she was injured by an arrest which was coupled with the elements which establish the tort of malicious prosecution. The terminology of the policy would appear to require the respondent insurance company to indemnify the appellant from such liability. However, while the appellant might be legally obligated to pay damages for malicious prosecution, the respondent insurer cannot under the public policy of this state indemnify the insured against liability for his own willful wrong. That policy is a part of every insurance contract and is expressed in section 533 of the Insurance Code,[9] which codifies the general rule that an insurance policy indemnifying the insured against liability due to his own willful wrong is void as against public policy. (*Arenson* v. *National Automobile & Cas. Ins. Co., supra,* 45 Cal.2d 81, 84; *Abbott* v. *Western Nat. Indem. Co.,* 165 Cal.App.2d 302, 305 [331 P.2d 997]; see also Civ. Code, § 1668.[10]) In *Russ-Field Corp.* v. *Underwriters at Lloyd's, supra,* 164 Cal.App.2d 83, the meaning of "willful act" as used in section 533 was construed as follows: "A 'wilful act' as used in this statute connotes something more blameworthy than the sort of misconduct involved in ordinary negligence, and something more than the mere intentional doing of an act constituting such negligence." (P. 96.)

The tort of malicious prosecution connotes something more blameworthy than an act of negligence. (*Richter* v. *Neilson,* 11 Cal.App.2d 503, 507 [54 P.2d 54].) The chief element of a cause of action for malicious prosecution is malice. To constitute malice there must be a motive or purpose, and it must be an improper one. (*Richter* v. *Neilson, supra,* p. 507; *Masterson* v. *Pig'n Whistle Corp.,* 161 Cal.App. 2d 323, 338 [326 P.2d 918].) The requirement in a malicious prosecution case is evidence which establishes bad faith, or the absence of an honest and sincere belief that the prosecution was justified by the existent facts and circumstances. (*Singleton* v. *Singleton,* 68 Cal.App.2d 681, 696 [157 P.2d 886]; *Grove* v. *Purity Stores, Ltd.,* 153 Cal.App.2d 234,

[9]Section 533 of the Insurance Code provides:

"An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or the insured's agents or others."

[10]Section 1668 of the Civil Code provides:

"All contracts which have for their object, directly or indirectly, to exempt anyone . . . for his own fraud, or willful injury to the person or property of another, . . . are against the policy of the law."

241 [314 P.2d 543].) As said in *Grove*: "The element of malice necessarily involves the process of the mind and its thinking." (P. 241.) Malice imports willfulness; and, accordingly, in our opinion, is a "willful act" within the meaning of section 533.

It is contended by the appellant, however, that while the respondent insurance company may not be required to indemnify for the damages assessed in a malicious prosecution action, it is, nevertheless, required to *defend* such an action. The argument is made by the appellant that section 533 merely states that the insurer is not liable *for a loss* caused by the willful act, but that it does not state that the insurer is not obligated to defend an action which is founded on a willful act. The gist of the argument is that the willfulness of the act cannot be determined until the action is tried and a determination made with respect thereto. Moreover, says the appellant, the trial court did, in the subject malicious prosecution action, make a finding that the appellant did not commit a willful act when it found that he did not act with malice and from a want of probable cause. The effect of this argument is that it at once impales the appellant on the horns of a dilemma. If the procuring of Mrs. Johnson's arrest was not willful, then, as we have pointed out above, there was no liability from the beginning. On the other hand, if the arrest was willful, there likewise was no liability from the beginning. The obligation to defend is predicated upon liability for a loss covered by the policy. Under the subtitle, "Defense," the policy provides as follows: "With respect to *such insurance as is aforded* [sic] *by this policy*, the Company shall (a) defend any suit against the insured alleging such injury. . . ." (Italics added.)

The general rule is that the obligation to defend is measured by comparing the terms of the insurance policy with the pleadings of the claimants who sue the insured. (*Liberty Bldg. Co.* v. *Royal Indem. Co.*, 177 Cal.App.2d 583, 587 [2 Cal.Rptr. 329]; *Bonfils* v. *Pacific Auto. Ins. Co.*, 165 Cal.App. 2d 152, 160 [331 P.2d 766]; *Osborne* v. *Security Ins. Co.*, *supra*, 155 Cal.App.2d 201, 206; *Ford* v. *Providence Washington Ins. Co.*, 151 Cal.App.2d 431, 437 [311 P.2d 930]; *Remmer* v. *Glens Falls Indem. Co.*, 140 Cal.App.2d 84, 90 [295 P.2d 19, 57 A.L.R.2d 1379]; *Ritchie* v. *Anchor Casualty Co.*, 135 Cal.App.2d 245, 250 [286 P.2d 1000]; *Lamb* v. *Belt Casualty Co.*, 3 Cal.App.2d 624, 630 [40 P.2d 311]; *Greer-Robbins Co.* v. *Pacific Surety Co.*, 37 Cal.App. 540,

543 [174 P. 110].) The obligation to defend is measured by the terms of the policy applied to the allegations of the complaint, whether they be true or false. (*Osborne* v. *Security Ins. Co.*, *supra*, p. 206; *Ritchie* v. *Anchor Casualty Co.*, *supra*, p. 250; *Lamb* v. *Belt Casualty Co.*, *supra*, p. 630.) ▇▇ As pointed out in the *Greer-Robbins Co.* case, the insurer's obligation to defend is one that must be determined before the outcome of the action against the assured, not thereafter. The insurer is not required to defend an action against the insured when the complaint in that action shows on its face that the injury complained of is not only not covered by, but is excluded from the policy. (*Remmer* v. *Glens Falls Indem. Co.*, *supra*, p. 90.) ▇▇ In the present case the amended complaint of the appellant states that the action brought against him by Mrs. Johnson was one for malicious prosecution. Since the respondent insurance company could not be liable under the policy for damages predicated upon the tort of malicious prosecution, the respondent insurance company was not obligated to defend such action.

The appellant relies upon *Lamb,* and *Walters* v. *American Ins. Co.*, 185 Cal.App.2d 776 [8 Cal.Rptr. 665]. The *Lamb* case is in accord with the general rule just alluded to. *Walters* is readily distinguishable from the case at bench. In *Lamb* a truck and trailer were involved in an accident with another automobile; the truck was insured with one company and the trailer with another; the automobile had collided with the rear end of the trailer; the company insuring the truck refused to defend an ensuing damage suit brought by the driver of the automobile against the owner of the truck and trailer wherein the complaint alleged that said owner had " 'carelessly and negligently stood and operated and maintained said truck and trailer' "; (p. 628) a judgment resulted against the owner of the truck and trailer and an action was brought upon the judgment against the company insuring the truck; the insurance company defended on the ground that there was no negligence on the part of the truck, claiming that it had so determined by an independent investigation; on appeal the court said: "In determining whether or not the appellant was bound to defend, its denial of liability and refusal to defend, based upon its own investigation of the facts in the case, are to be disregarded. The language of its contract must first be looked to, and next, the allegations of the complaints in each action for damages against the insured. The complaints clearly allege damages resulting from an

alleged negligent operation of the truck, and the policy in unmistakable language binds the insurer to defend every such action even though the same be groundless." (P. 630.)

In *Walters* a claim was made against the insured for an assault and battery. The carrier of his personal liability policy refused to defend the claim on the ground that an assault and battery is a willful act. The insured settled with the claimant in order to preserve his credit standing, and thereupon brought an action against the carrier for declaratory relief and for recovery of the amount of the settlement. In reversing a judgment for the defendant the appellate court held that there was no action or pleading filed by the claimant whereby the insurer's duty to defend would be measured. It accordingly concluded that the question was open in the proceeding before it and thereupon proceeded to interpret the exclusion provision in the policy. The exclusion there was to the effect that the coverage did not apply to injury " 'caused intentionally by or at the direction of the insured.' " (P. 779.) The trial court had found that the insured had acted in self-defense, but held that because the settlement was made to protect the insured's credit and not as the result of any legal obligation there was no liability on the part of the carrier. The appellate court held, however, that in view of the trial court's finding that the insured had acted in self-defense the injury was not "intentional" within the terminology of the policy before it. The reviewing court reasoned that under the *Russ-Field Corp.* case, a person acting in self-defense is not committing a willful act under section 533, because while he " 'intended the act,' " he "acted by chance and without a preconceived design to inflict injury just as though he were acting intentionally, although negligently, and injured someone." (P. 783.) The appellate court thereupon concluded that the element of wrongfulness or misconduct contemplated in section 533 was absent. In the case at bench we have a pleading by which the insurer's duty to defend can be measured. In our opinion, *Walters* is not subject to the interpretation that in every case there is an obligation to defend until it is determined whether or not the act complained of was in fact willful. Such a rule would require the defense, in every instance, of actions in which it clearly appears from the face of the pleading and the terms of the policy that there can be no indemnity for loss. Such a holding is inconsistent with the well-established principle of law announced by a host of authorities that an insurer's obligation

to defend is measured by the terms of the policy and the pleading of the claimant who sues the insured. Suffice it to say, *Walters* recognizes this general principle of law, but proceeds to distinguish it on the basis that where a settlement of litigation has been made and no judgment establishing the liability of the insured rendered, the question of the insurer's liability to defend remains open for adjudication in a later proceeding.

We accordingly conclude that the amended complaint in the present case does not state a cause of action. It appears to us, moreover, that it cannot be amended to state a cause of action. Therefore, the judgment as entered should stand.

The judgment is affirmed.

Bray, P. J., and Sullivan, J., concurred.