DART INDUSTRIES, INC., a Delaware corporation formerly known as Rexall Drug and Chemical Company, Plaintiff-Appellee,

v.

LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts corporation, Defendant-Appellant.

No. 71–1986.

United States Court of Appeals, Ninth Circuit.

Sept. 25, 1973.

**1296**

Jean Wunderlich (argued), William D. Jennett, of Gilbert, Thompson, Kelly, Crowley & Jennett, Los Angeles, Cal., for defendant-appellant.

Bruce A. Beckman (argued), James S. Cline, of Adams, Duque & Hazeltine, Los Angeles, Cal., for plaintiff-appellee.

Before CARTER and TRASK, Circuit Judges, and BURNS,* District Judge.

TRASK, Circuit Judge:

Liberty Mutual Insurance Company, a Massachusetts corporation (Liberty), appeals from a final judgment entered in favor of Dart Industries, Inc., a Delaware corporation (Dart), following the granting of a motion for summary judgment in this diversity case. We affirm.

On June 23, 1961, Liberty had issued its Comprehensive General Liability Policy of Insurance, naming The Owl Drug Company (Owl) and Rexall Drug and Chemical Company (Rexall) as named insureds. On April 3, 1962, Owl was merged into Rexall under the "short merger" procedure of Nevada Revised Statutes § 78.486. Such a merger results from the exercise of a statutory right without agreement or action required on the part of the merged corporation and no agreement or action by Owl took place here. Effective April 22, 1969, the name of Rexall was changed to Dart Industries, Inc., a publicly held stock corporation.

Prior to June 23, 1961, one Calabrese had become indebted to Owl for large sums of money, principally in connection with sales of drug stores. Upon receipt of a credit information report concerning Calabrese and this indebtedness from a Credit Managers Association of which Owl was a member, W. H. Fisher, Jr., then president of Owl, sent a letter to the Association dated June 23, 1961, on a letterhead of Rexall controverting some of the statements in the report. Calabrese made no complaint about the letter to Owl prior to the filing of a libel action on March 22, 1963, against Rexall (now merged with Owl) in state court. Despite Rexall's defense that the letter was privileged, requiring a finding by the jury of malice in the writing of the letter by Owl, a verdict of $880,000 plus costs was recovered by Calabrese. Subsequently this amount was reduced to $550,000 plus costs.

No question of policy coverage has been raised by Liberty. Its principal defense is that under California Insurance Code, Section 533, the insurer is not liable where the loss was caused by the willful act of the insured.[1] Liberty contends this was such a case.

When Liberty refused to pay the judgment, Dart, on April 17, 1969, paid it, plus interest, in the total amount of $615,062.54. Dart then filed this action for recovery of that sum under the provisions of the policy. The summary judgment below permits Dart to recover that amount, plus interest, now grown to $697,564.56.

The thesis of Liberty is that a corporation can act only through its agents; that it is well established that a corporation may be held liable for the wanton, malicious, willful acts of its agents or employees done within the scope of their employment whereby injuries are inflicted on a third person, although such acts have not been expressly authorized or subsequently ratified. It refers generally to 19 C.J.S. Corpora-

---

* Honorable James M. Burns, United States District Judge, District of Oregon, sitting by designation.

1. Section 533 provides:

   "An insurer is not liable for a loss caused by the wilful act of the insured; but ·he is not exonerated by the negligence of the insured, or of the insured's agents or others."

tions § 1263 and to 19 Am.Jur.2d, Corporations § 1428. No quarrel may be had with such an argument in general and the California authorities support it. California Grape Control Board v. Boothe Fruit Co., 220 Cal. 279, 29 P.2d 857 (1934); Johnson v. Monson, 183 Cal. 149, 190 P. 635 (1920). Therefore, appellant concludes, since the letter which Mr. Fisher wrote was within the general scope of his corporate responsibilities as established by the libel judgment in state court, it also became an act of the corporation within the ambit of section 533.

Dart contends that the position of Liberty oversimplifies the problem by confusing in one proposition what in reality involves two considerations. The first is the issue of under what circumstances a principal or an employer can be liable in damages to third persons for acts of its agents or employees. The second and critical issue here, is whether a principal or employer may insure against the potential liability for such acts of its agents or employees, in the light of section 533.

Dart's argument is that there is a policy of the law to impose vicarious liability upon the principal or employer for damages caused by agents or employees to third persons; that there is also a public policy and established business practice to permit persons including corporations to purchase insurance to indemnify them against damages which might be imposed for not only tortious acts of agents or employees but also willful acts of agents or employees, for which such vicarious liability may be imposed.

The trial court took the view as shown by its comments during argument that where policy coverage was otherwise admitted, as it was here, and there had been no showing that the letter had by formal action of the Board of Directors been previously authorized or subsequently ratified; and no showing that the corporation by some form of informal action had indicated prior approval

or later acquiescence, section 533 did not constitute a legal defense.

There is a surprising dearth of direct authority upon the narrow issue involved or collateral authority which might point the way. A group of arson cases decided by the courts of California give support to appellee, Dart. In Arenson v. National Automobile & Casualty Insurance Co., 45 Cal.2d 81; 286 P.2d 816 (1955), an insured under a general liability policy had a judgment obtained against him for damages caused when his minor son started a fire which injured school property. A statute made a parent liable for all damage which was "wilfully" caused by a child. The company refused to indemnify because the damage was caused "intentionally by an insured" within the terms of a policy exclusion. The California Supreme Court in reversing a judgment for the insurer, also interpreted section 533 and held that it did not apply where the insured was not at fault. The court said:

> "Section 533 of the Insurance Code, which codifies the general rule that an insurance policy indemnifying the insured against liability due to his own wilful wrong is void as against public policy, has no application to a situation where the plaintiff is not personally at fault." 45 Cal.2d at 84, 286 P. 2d at 818.

Here, then, vicarious liability is imposed upon an insured in a damage action for a willful act which the insured did not directly commit, yet the right to insure against the consequences of the willful act was upheld against the claimed exclusion of section 533. Although not a case of corporate liability, it clearly indicates the policy of the statutory exclusion as being limited to a situation where the insured is personally at fault. *See also,* Erlin-Lawler Enterprises, Inc. v. Fire Insurance Exchange, 267 Cal.App. 2d 381, 73 Cal.Rptr. 182 (1968); Nuffer v. Insurance Co. of North America, 236 Cal.App.2d 349, 45 Cal.Rptr. 918 (1965).

The court in *Nuffer, supra,* recognized the distinction between vicarious

liability of respondeat superior and the rights flowing from a policy of indemnity insurance, saying:

" . . . [T]he rules governing a determination of the scope of an agent's authority for the purpose of ascertaining the responsibility of his principal on account of wrongs committed by the agent in the transaction of the business of the agency do not control a determination of the scope of the agent's authority for other purposes. The case at bench does not concern the responsibility of a principal to a third person for a loss occasioned by wrongs committed by an agent. Instead, the case here concerns the responsibility of a third person under a contract of indemnity for a loss sustained by the principal as a result of an act of the agent. Stated otherwise, the case here concerns the coverage provided by the insurance policies." 236 Cal.App.2d at 356, 45 Cal.Rptr. at 923.

In Hendrix v. Employers Mutual Liability Insurance Co., 98 F.Supp. 84, 87 (E.D.S.C.1951), reversed on other grounds, 199 F.2d 53 (4th Cir. 1952), the court in an assault and battery case by an employee said:

"It is true, as a general proposition of law, that public policy will not permit an insured to be indemnified for liability incurred by his own unlawful act. Farm Bureau Mut. Automobile Ins. Co. v. Hammer, 4 Cir., 1949, 177 F.2d 793. It is, therefore, necessary to determine whether the counterclaims sought to recover from the plaintiff on account of his personal wrong-doing, or whether they sought to hold him for damages because of the wrong-doing of his agent, under the doctrine of *respondeat superior*. Indemnity for the latter is not contrary to public policy because the insured in such a case is guilty of no wrong-doing, but simply has the misfortune to be legally responsible for the wrong-doing of another."

The cases relied upon by appellant are cases where an individual insured was the one who personally committed the act for which he was held responsible in damages. Maxon v. Security Insurance Co., 214 Cal.App.2d 603, 29 Cal.Rptr. 586 (1963); Capachi v. Glens Falls Insurance Co., 215 Cal.App.2d 843, 30 Cal. Rptr. 323 (1963). We do not find them helpful to the solution of the case now under consideration.

■ An examination of the cases indicates that the rationale of section 533 is that the wrongdoer as a matter of public policy should not profit from his own wrong, or, in other cases, a somewhat similar reasoning that the wrongdoer should not be indemnified against the effects of his wrongdoing. Hendrix v. Employers Mutual Liability Insurance Co., *supra*; Erlin-Lawler Enterprises, Inc. v. Fire Insurance Exchange, *supra*.

■ Here, Fisher certainly will not gain anything from the insurance protection afforded Dart. He has left the employment of the corporation. Neither, does it appear, will those who remain. Whether they were individually sued in the libel action or not, does not appear from the record before us. It would certainly appear that they were subject to suit. Should a recovery be obtained (a possibility upon which we express no opinion) and an action begun for indemnification under a policy like that before us, section 533 would appear to be more germane. Liberty, viewing with alarm, contends that the trial court's interpretation of section 533 makes the section meaningless. We do not see it so. On the contrary it could be argued that if appellant's view were adopted a defense could arguably be interposed that almost every tortious act of a corporate agent or employee was "wilful" under the statute. This would make the comprehensive liability policy illusory for corporate purposes. The view of the trial court upon the facts of this case appears to us to be correct in principle and consistent with the construction which would have been accord-

ed by the California courts. Norm Thompson Outfitters, Inc. v. General Motors Corp., 448 F.2d 1293, 1299 (9th Cir. 1971).

Appellant calls our attention to the fact that this case has been decided on cross motions for summary judgment and urges that genuine issues of material fact remain which make it inappropriate to determine now that appellee is entitled to judgment as a matter of law. Rule 56(c) Fed.R.Civ.P. states that a motion for summary judgment may be granted whenever "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See* 6 Moore's Federal Practice (2d ed.) ¶ 56.15. We have given careful consideration to this argument. Both sides agreed that Fisher was an agent of the corporation as its president; that he was acting in the course of his employment in sending the letter; that other corporate officials were consulted or were aware of its preparation; that it was not the type of matter that would be discussed with the Board of Directors or senior management of Rexall-Dart; and that it was not discussed at that level either before being sent or ratified after being sent. It appears clearly to be the type of activity that would not ordinarily, and did not here, cause a ripple in the management of the affairs of the corporation at the directors' level. In order to afford counsel every opportunity to fully explore the facts, the court after having twice heard arguments on summary judgment and having indicated its inclinations as to the proper disposition of the case, withheld its ruling in order to give appellant additional opportunity to develop further facts [2] or issues on material facts. It was after this that appellant deposed Mr. Fisher and house counsel Thedens. A careful reading of those depositions discloses no additional facts or genuine issues of fact which would preclude an order for summary judgment.[3] Credibility is not an issue since there is no disagreement concerning the basic facts. Nor are we persuaded that "varying factual conclusions" may be drawn by reasonable persons from the basic facts not in dispute. Whatever "varying conclusions" may be drawn, there remains a complete absence of proof that the policy-making management of the corporation approved, ratified or had any knowledge of the letter or its libel. No additional relevant facts which could be adduced on trial have been suggested[4] and we therefore affirm the decision of the trial court on summary judgment.

Judgment affirmed.

---

2. At the second hearing on motions for summary judgment, counsel for Liberty told the court: "I think eventually, if this case is to be tried, we can stipulate to most of the facts." R.T. 28.

3. At page 11 of its opening brief, Liberty states "that while the evidentiary facts stated in the depositions . . . and the affidavits are not in dispute, they are subject to varying inferences as to ultimate facts to be drawn therefrom, as well as to the judgment of the trier of facts as to credibility."

4. In Byrnes v. Mutual Life Ins. Co. of New York, 217 F.2d 497, 501 (9th Cir. 1954), we said,

" 'When a party presents evidence on which, taken by itself, it would be entitled to a directed verdict if believed, and which the opposite party does not discredit as dishonest, it rests upon that party at least to specify some opposing evidence which it can adduce and which will change the result. . . .' Radio City Music Hall Corporation v. United States, 2 Cir., 1943, 135 F.2d 715, 718."