[No. A056302. First Dist., Div. One. Dec. 30, 1992.]

CALIFORNIA CASUALTY MANAGEMENT COMPANY, Plaintiff and Respondent, v.
JOSEPH A. MARTOCCHIO et al., Defendant and Appellant.

COUNSEL

Paul Kleven and Charles O. Morgan, Jr., for Defendant and Appellant.

Clapp, Moroney, Bellagamba, Davis and Vucinich, Duane E. Clapp, Jr., and Ellen C. Arabian for Plaintiff and Respondent.

OPINION

PETERSON, J.—We hold in this case that a party ordered to pay attorney fees on the authority of Code of Civil Procedure section 128.5 is precluded by Insurance Code section 533 from recovering such fees under the provisions of a comprehensive general liability insurance policy insuring against liability for malicious prosecution.

I. FACTS AND PROCEDURAL HISTORY

The underlying facts of this litigation have been the subject of an unpublished opinion on a prior appeal in this division (*Martocchio* v. *Chronicle Broadcasting Co.* (Mar. 13, 1990) A041774 [nonpub. opn.]).[1] Chronicle prepared and broadcast a report on arson in the San Francisco area. The report recounted the long history of suspicious fires on numerous properties owned by appellant Joseph Martocchio (Martocchio) and insured by him

[1]Respondents in appeal No. A041774 included Chronicle Broadcasting Company, KRON-TV, and one of their named employees. In this appeal, these respondents will be referred to as "Chronicle."

through various insurers. The program stated that Martocchio was under investigation by law enforcement authorities for engaging in arson for profit, by allegedly insuring his buildings for more than they were worth and then burning them down. A former associate of Martocchio's appeared on the telecast, recounting a distinctive method which he stated Martocchio and his sons used to set the fires, in order to avoid leaving evidence of arson.

Martocchio and his sons sued Chronicle for slander and "emotional distress." The trial court dismissed the action for delay in prosecution, after Martocchio and his sons failed to take action to bring it to trial in a timely fashion.

Chronicle sought an award of its attorney fees as sanctions under the provisions of Code of Civil Procedure section 128.5[2] and Code of Civil Procedure section 1021.7. In appeal No. A041774, we affirmed the trial court's order awarding attorney fees to Chronicle, after hearing, of $216,460; and specifically affirmed the lower court's findings that Martocchio had engaged in "bad-faith actions or tactics" in filing and maintaining the lawsuit, which was "totally and completely without merit" (Code Civ. Proc., § 128.5, subds. (a) & (a)(2)), constituting frivolous conduct within the meaning of section 128.5 (see *Martocchio* v. *Chronicle Broadcasting Co.*, *supra*, A041774 [nonpub. opn.]), and that Martocchio's action "was not filed or maintained in good faith and with reasonable cause" (Code Civ. Proc., § 1021.7).[3]

Martocchio then demanded that his insurer, California Casualty Management Company (California Casualty), pay the sanctions award. California Casualty brought this action for declaratory relief, seeking a ruling that it was not required to pay the sanctions imposed by the trial court upon its insured.

---

[2]Section 128.5 provides, in pertinent part: "(a) Every trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay. . . ."

[3]The Fourth District has held that Code of Civil Procedure section 1021.7 was intended solely to authorize an award of attorney fees in an action brought by or against law enforcement personnel. (*Planned Protective Services, Inc.* v. *Gorton* (1988) 200 Cal.App.3d 1, 14-15 [245 Cal.Rptr. 790].) We stated in our previous unpublished opinion: "[Chronicle] obviously [is] not a law enforcement agency, but [it] suggest[s] the *Gorton* court misinterpreted or misunderstood the relevant legislative history. [Chronicle] do[es] draw our attention to passages from the legislative history which support [its] position. Since we have concluded that the award of sanctions here may be properly sustained on alternative grounds, we need not address [Chronicle's] contention in this regard." (*Martocchio* v. *Chronicle Broadcasting Co.*, *supra*, A041774, [nonpub. opn.]) Similarly, here we will rest our holding on the application of Code of Civil Procedure section 128.5 only; we need not, and do not, address any questions arising from sanctions imposed for frivolous appellate contentions, under the standards articulated by *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].

California Casualty then moved for summary judgment. The trial court, per Judge Pollak, granted the motion. Martocchio timely appealed from an ensuing judgment.

## II. DISCUSSION

■ We conclude that a court-imposed award of sanctions under Code of Civil Procedure section 128.5, for bad faith conduct or tactics in engaging in litigation which is totally and completely without merit, cannot be shifted to that litigant's insurer. The sanctions must be paid by the party sanctioned. We, therefore, will affirm the trial court's ruling.

### A. *Insurance Code Section 533 and the Meaning of "Wilful"*

Insurance Code section 533 has existed without substantive change in the law of this state since it was codified as Civil Code section 2629 in 1873-1874. (Code Amends. 1873-1874, ch. 612, § 2629, p. 873; Stats. 1935, ch. 145, § 533, p. 510.) It provides: "An insurer is not liable for a loss caused by the wilful act of the insured; but he [the insurer] is not exonerated by the negligence of the insured, or of the insured's agents or others."

■ Insurance Code section 533 is an implied exclusionary clause statutorily read into all insurance policies. (*J. C. Penney Casualty Ins. Co. v. M. K.* (1991) 52 Cal.3d 1009, 1019 [278 Cal.Rptr. 64, 804 P.2d 689].) It is subject to the rules of *statutory* construction, *not* to the rules governing contract interpretation, and must be construed in order to effect its purpose. (*Id.* at p. 1020, fn. 9;[4] *B & E Convalescent Center v. State Compensation Ins. Fund* (1992) 8 Cal.App.4th 78, 93 [9 Cal.Rptr.2d 894].)

"Read literally, section 533 is internally inconsistent. Its first sentence purports to exclude coverage for all willful acts. The second sentence, however, expressly provides that the insured's negligence does not allow an insurer to disclaim coverage." (*J. C. Penney Casualty Ins. Co. v. M. K., supra,* 52 Cal.3d at p. 1020.) One enunciated purpose of Insurance Code section

---

[4]*Studley v. Benicia Unified Sch. Dist.* (1991) 230 Cal.App.3d 454, 459 [281 Cal.Rptr. 631] ("Consistent with the rule of strict construction of exclusionary insurance clauses, the courts have construed narrowly the meaning of a 'wilful act' under . . . section 533.") is contrary to the disapproval expressed by the Supreme Court in this 1991 footnote of the rule strictly construing section 533 against an insurer. Said the Supreme Court: "The premise of the strict-construction rule is that an insurance policy is an adhesion contract drafted by the insurer, which therefore must be held responsible for any ambiguity. [Citation.] Section 533, however, is a statute. It is subject to the rules of statutory construction, not the rules of contract interpretation." (*J. C. Penney Casualty Ins. Co. v. M. K., supra,* 52 Cal.3d at p. 1020, fn. 9.)

533 is to discourage willful torts, by denying coverage for willful wrongs. (*B & E Convalescent Center* v. *State Compensation Ins. Fund, supra,* 8 Cal.App.4th at pp. 93-94.)

The Supreme Court's recent ruling in *J. C. Penney, supra,* has clarified the meaning of the statute. In a prior case, *Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 887 [151 Cal.Rptr. 285, 587 P.2d 1098], it seemed to suggest that a "wilful act" for which insurance coverage is proscribed by Insurance Code section 533 is one committed with a " 'preconceived design to inflict injury.' " Thereafter, various appellate courts held a willful act described by section 533 was one involving a general intent to commit that act coupled with a *subjective* intent to harm or with a *specific* intent to injure or harm. (Cf. *Republic Indemnity Co.* v. *Superior Court* (1990) 224 Cal.App.3d 492, 501 [273 Cal.Rptr. 331]; *B & E Convalescent Center* v. *State Compensation Ins. Fund, supra,* 8 Cal.App.4th at p. 94, and cases there cited.) Martocchio relies on these and similar authorities in urging that, absent a specific finding his conduct in filing the lawsuit was willful, i.e., was coupled with his subjective intent thereby to harm Chronicle, his conduct, though concededly intentional, is nonetheless within the ambit of indemnity under California Casualty's policy.

*J. C. Penney* has clarified the *Clemmer* decision in two important particulars. First, "the *Clemmer* discussion of a 'preconceived design' was limited to the insured's mental capacity to commit the wrongful act [murdering Dr. Clemmer by shooting him five times]." (*J. C. Penney Casualty Ins. Co.* v. *M. K., supra,* 52 Cal.3d at p. 1023.) Second, "*Clemmer* does not require a showing by the insurer of its insured's 'preconceived design to inflict harm' when the insured seeks coverage for an intentional and wrongful act *if the harm is inherent in the act itself.*" (*Id.* at p. 1025, italics added.)

 In short, *J. C. Penney* holds that Insurance Code section 533 precludes coverage where the insured's conduct (child molestation in that case) "is *always* intentional . . . , *always* wrongful, and . . . *always harmful.*" (52 Cal.3d at p. 1025, original italics, underscored italics added; *Fire Ins. Exchange* v. *Altieri* (1991) 235 Cal.App.3d 1352, 1358 [1 Cal.Rptr.2d 360] ["The emphasis [on whether an act is uninsurable under section 533] is on the wrongfulness of the act committed by the insured, not on the insured's subjective expectation of injury [to another]."]; *B & E Convalescent Center* v. *State Compensation Ins. Fund, supra,* 8 Cal.App.4th at pp. 98, 99 [A termination of employment "in violation of antidiscrimination statutes or other fundamental and substantial public policies is inherently harmful" and "must be held *wrongful as a matter of law.* . . . It would be unreasonable,

mischievous and improper if section 533 . . . were construed in any way other than to deny insurance coverage in the most certain and unambiguous terms for willful and intentional acts that contravene 'fundamental policies that are delineated in constitutional or statutory provisions' [citation]." Italics in original.].)

### B. *Application of Insurance Code Section 533 to Sanctions Under Code of Civil Procedure Section 128.5*

 It is certainly self-evident and undisputed here that the filing of a lawsuit is always an intentional act. No one urges that Martocchio accidentally undertook such action. Further, examination of the standards for the imposition of sanctions under Code of Civil Procedure section 128.5 reveals that, in a case such as this one, Insurance Code section 533 bars the attempt to shift to an insurer the losses occasioned by the "wilful act" of a violation of section 128.5.

 The term "wilful act" means "something more than the mere intentional doing of an act constituting [ordinary] negligence. . . . [Citation.]" (*J. C. Penney Casualty Ins. Co.* v. *M. K.*, *supra*, 52 Cal.3d at p. 1021, internal quotation marks omitted), or the intentional violation of a statute (*B & E Convalescent Center* v. *State Compensation Ins. Fund*, *supra*, 8 Cal.App.4th at p. 94), i.e., some act more blameworthy than ordinary negligence (*State Farm Fire & Casualty Co.* v. *Drasin* (1984) 152 Cal.App.3d 864, 868 [199 Cal.Rptr. 749]). "[S]ection 533 does not preclude coverage for acts that are negligent or reckless." (*J. C. Penney Casualty Ins. Co.* v. *M. K.*, *supra*, 52 Cal.3d at p. 1021.) Insurance Code section 533 does preclude insurance coverage, as a matter of public policy, for a wrongdoer from his act of wrongdoing (*Dart Industries, Inc.* v. *Liberty Mutual Insurance Co.* (9th Cir. 1973) 484 F.2d 1295, 1298); or for fines or restitution imposed as a result of a criminal conviction, or for civil proceedings prosecuted by the state in the exercise of its police power and regulatory authority conferred by statute (*Jaffe* v. *Cranford Ins. Co.* (1985) 168 Cal.App.3d 930, 934-935 [214 Cal.Rptr. 567]).

 While the parties have not cited and our own research has not disclosed any published decisions precisely on point, it is clear that Insurance Code section 533 and the public policy it represents bar the attempt to shift a court-imposed sanctions award to an insurer. (See *J. C. Penney Casualty Ins. Co.* v. *M. K.*, *supra*, 52 Cal.3d at p. 1021.)

Our conclusion that Martocchio's insurance policy provides no coverage for these sanctions is reinforced by the trial court's proper application, in imposing sanctions, of the factors elucidated in Code of Civil Procedure section 128.5.

Code of Civil Procedure section 128.5 provides a means of ordering one party to pay another's "reasonable expenses, including attorney's fees"

incurred because of the sanctioned party's "bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay."[5]

A predicate condition for imposition of a Code of Civil Procedure section 128.5 sanction order is, thus, an explicit or implicit finding that the expenses the court orders paid were incurred because of Martocchio's bad faith action or tactics.

The lower court's order necessarily implies that Martocchio's conduct was intentional, without merit, and harmful, by expressly finding that Martocchio's actions and tactics generating the sanctions award were undertaken in "bad-faith." Martocchio's argument that the trial court has to make an additional formal finding his actions were "wilful" in order to foreclose their coverage under the insurance policy California Casualty issued is specious. The Legislature has made it clear, by the broadened powers conferred on trial courts by section 128.5 and its subsequent amendments (see fn. 5, *ante*), that its statutory objective is to ensure to the public at large freedom from bad faith actions or tactics by litigants and counsel in trial courts which are frivolous or solely intended to cause unnecessary delay, and which inhibit per se the orderly administration of justice. Such bad faith actions or tactics are violative of that statutory objective. They are acts which are always intentional and wrongful and in which harm is always inherent as a matter of law. They are patently "wilful" acts for which insurance coverage is always proscribed by Insurance Code section 533, and no formal finding of "wilful act" is necessary to trigger that statute's application.

We understand, but reject, the various inventive arguments marshalled by Martocchio's present counsel in an attempt to secure coverage for a court-imposed sanctions award. Martocchio primarily relies upon the fact that the personal injury liability insurance policy in issue here specifically covers claims for "False Arrest, Detention or Imprisonment, or *Malicious Prosecution*." (Italics added.) Since the policy specifically covers malicious prosecution claims, Martocchio argues that it must cover an analogous claim for court-imposed sanctions.

We must reject this unpersuasive argument. We are dealing here not with insurance liability for, say, malicious prosecution of an accused but innocent shoplifter. In fact, this appeal does not concern a malicious prosecution action brought by a third party at all. We are, instead, dealing here with court-imposed sanctions in an action brought by Martocchio, the insured.

---

[5]Section 128.5 was added to the Code of Civil Procedure by the Legislature after the Supreme Court's decision in *Bauguess* v. *Paine* (1978) 22 Cal.3d 626 [150 Cal.Rptr. 461, 586 P.2d 942], in order to allow an award of sanctions despite the contrary implications of the *Bauguess* case. (Stats. 1981, ch. 762, § 2, p. 2968.)

While arguably sanctions may serve compensatory purposes similar to those of a malicious prosecution action (cf. *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 873-874 [254 Cal.Rptr. 336, 765 P.2d 498]), sanctions are often imposed and calculated without regard to the need to compensate the opposing party, but for the purpose of deterrence (see, e.g., *Bank of California v. Varakin* (1990) 216 Cal.App.3d 1630, 1638-1639 [265 Cal.Rptr. 666]). Sanctions imposed under Code of Civil Procedure section 128.5 "to pay any reasonable expenses, including attorney's fees" always serve an important deterrent goal, regardless of the need for compensation, which makes them in some ways analogous to an award of punitive damages. (*In re Marriage of Flaherty, supra*, 31 Cal.3d at pp. 648-649.) This deterrence function would obviously be vitiated if a litigant could simply engage in bad faith tactics without fear of the consequences, by shifting any court-imposed sanctions onto his insurer. (See *Papadakis v. Zelis* (1991) 230 Cal.App.3d 1385, 1389 [282 Cal.Rptr. 18] [Court-imposed sanctions may not be avoided by the expedient of filing a bankruptcy petition.].)

■ Further, Martocchio's proposed analogy to malicious prosecution cases does not withstand analysis because, as Justice Molinari ruled in *Maxon v. Security Ins. Co.* (1963) 214 Cal.App.2d 603, 615, Insurance Code section 533 also bars coverage for a malicious prosecution action arising from the "wilful" act of an insured. A bad faith action or tactic sanctioned under Code of Civil Procedure section 128.5 is, as we have pointed out, "wilful" per se. Martocchio can only respond by urging that *Maxon* should not be followed on its interpretation of section 533; he also attempts to distinguish *Maxon* because the policy in that case did not specifically cover malicious prosecution claims, as his policy purports to do. *Maxon*, however, correctly held that section 533 bars insurance recovery for any willful acts—as a matter of statutory, not contractual, interpretation. (Accord, *J. C. Penney Casualty Ins. Co. v. M. K., supra*, 52 Cal.3d at pp. 1020, fn. 9, 1021.)

■ Martocchio also cites a number of cases in which (although the issue was not explicitly raised for decision) courts apparently assumed coverage might extend under some circumstances to claims made in whole or in part for malicious prosecution. (See, e.g., *City Products Corp. v. Globe Indemnity Co.* (1979) 88 Cal.App.3d 31, 35, 34 [151 Cal.Rptr. 494] [§ 533 barred recovery of punitive damages imposed for malicious prosecution (citing *Maxon v. Security Ins. Co., supra*, 214 Cal.App.2d 603); the insurer had already paid the much smaller compensatory award, apparently without

protest.]; cf. also *Harbor Ins. Co.* v. *Central National Ins. Co.* (1985) 165 Cal.App.3d 1029, 1043 [211 Cal.Rptr. 902] [A malicious prosecution did not occur within the policy coverage because it happened prior to the policy's issuance.]; accord, *Zurich Ins. Co.* v. *Peterson* (1986) 188 Cal.App.3d 438, 448 [232 Cal.Rptr. 807].) These cases do not assist Martocchio, since none of them endorsed his argument; in fact, their rationales are consistent with our conclusion that Insurance Code section 533 bars coverage where the insured's own "wilful act," as opposed to a negligent act, is the basis of liability.

Next, Martocchio argues that summary judgment might have been improper since there was no proof he filed his frivolous action with a wrongful intent. He cites cases which analyzed the issues without the benefit of our Supreme Court's recent decision in *J. C. Penney Casualty Ins. Co.* v. *M. K.*, *supra*, 52 Cal.3d 1009—such as *State Farm Fire & Casualty Co.* v. *Eddy* (1990) 218 Cal.App.3d 958, 972 [267 Cal.Rptr. 379], which held that there might be insurance coverage for herpes contracted during consensual sexual intercourse, if the insured did not know he had herpes and did not act with intent to harm his partner. Needless to say, that case is readily distinguishable. The act of consensual sexual intercourse is not, as bad faith actions or tactics here are, always wrongful and harmful, rather the reverse: Only if the insured knew he had contagious herpes would his act causing damage have been "wilful" within the meaning of Insurance Code section 533.

Equally unavailing is Martocchio's citation to *United Pacific Ins. Co.* v. *McGuire Co.* (1991) 229 Cal.App.3d 1560, 1566-1567 [281 Cal.Rptr. 375], a case which held there may be coverage for "mental distress" suffered by an employee upon his discharge, subject to the requirement of Insurance Code section 533 that the infliction of severe mental distress not be willful, expected, or intended. (But cf. *B & E Convalescent Center* v. *State Compensation Ins. Fund*, *supra*, 8 Cal.App.4th at pp. 98-99 [After the Supreme Court's decision in *J. C. Penney*, section 533 bars coverage for an employer's willful act in wrongfully discharging an employee for proscribed discriminatory reasons.].) Whatever may be the case with the allegedly wrongful discharge of an employee, as we have observed, the bad faith filing of a frivolous lawsuit is always intentional, wrongful, and harmful; and is, hence, "wilful" within the meaning of section 533. (See *J. C. Penney Casualty Ins. Co.* v. *M. K.*, *supra*, 52 Cal.3d at p. 1025 [There is no need to prove that a child molester acted with intent to injure his victim, since child molesting is always wrongful and willful as a matter of law.].)

Additionally, the record in this case independently shows the trial court imposed sanctions for bad faith actions by Martocchio which could in no

way be, as he suggested, characterized as merely negligent. The finding of bad faith conclusively excludes negligence as the cause of the actions sanctioned under Code of Civil Procedure section 128.5. As our prior opinion recounted, it was uncontested that Martocchio was, in fact, under investigation by federal authorities for arson at the time the news report claimed he was under investigation. It was uncontested that more than a dozen suspicious fires occurred on properties owned by Martocchio and his associates, and that Martocchio received large insurance proceeds for damage caused by those fires. It was uncontested that a close business associate of Martocchio also had accused Martocchio of committing arson, and had recounted a specific method Martocchio and his associates used, involving fumes from paint thinner, in order to avoid detection. Martocchio also resisted, without good cause, the legitimate attempts of Chronicle in the prior action to conduct discovery as to the circumstances of the fires. Martocchio was repeatedly sanctioned by the trial court for this bad faith resistance to discovery in the lawsuit he himself brought, but Martocchio persisted in his behavior. He presented absolutely no timely evidence to the trial court which would indicate he had been libeled, nor any evidence indicating a good faith belief in the merit of his claims. The evidence also showed he threatened to blow out the brains of a witness if the witness did not change his story, and forced the witness to recant at gunpoint. These facts and activities, which amply supported the trial court's order imposing sanctions, were necessarily known to Martocchio and necessarily willful and intentional, not negligent; no trial court could reasonably conclude to the contrary—and the trial court here plainly did not.

Finally, Martocchio argues that providing insurance coverage for a sanctions award would serve to increase the compensation available to parties damaged by frivolous lawsuits. Any marginal benefit to be achieved by providing a solvent insurer, as a target behind a litigant who is too impecunious to pay sanctions but not too impecunious to have insurance, is well outweighed by the loss of deterrence which would occur if parties believed they could engage in spiteful and frivolous litigation without worrying about any financial consequences to themselves. (Cf. *Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1267 [10 Cal.Rptr.2d 538, 833 P.2d 545] ["If insurance coverage were available for monetary awards under the Unfair Business Practices Act, a person found to have violated the act would simply shift the loss to his insurer . . . ."].) We reject an extension of the scope of insurance coverage so as to foist upon the insurers of this state a duty to respond in damages for the bad faith frivolous litigation conducted by their insureds in California courts.

## III. DISPOSITION

The judgment is affirmed.

Kline, P. J., and Smith, J., concurred.

On January 29, 1993, the opinion was modified to read as printed above.